## The Boston Iron Company *vs.* Benjamin King.

A mortgage of real estate being made for $3200, whilst the estate was under an attachment on mesne process, for the debt of the mortgagor, without the knowledge of the parties, and a part of the same estate being levied upon and set off in execution in pursuance of such attachment; the mortgagor thereupon, and in consequence of such levy, gave the mortgagee his note for $1200, secured by a mortgage of personal estate; and the mortgagee afterwards assigned the mortgage on the real estate for $2000, and the assignee paid the amount of the levy on the mortgaged estate, and received a conveyance of the land levied on from the judgment creditor: On a bill in equity to redeem, by a purchaser of the equity of redemption, against the assignee of the mortgagee, it was held, that the giving of the note and mortgage for $1200 was a payment to that amount of the first mortgage, and that the amount payable for the redemption of the latter was the sum of $2000, with interest thereon from the time of the assignment.

The Boston Iron Company *v.* King.

On a reference to a master in chancery, to state an account between mortgagor and mortgagee on a bill to redeem, the master reported that certain repairs and improvements, for which the mortgagee claimed an allowance,. were, in the opinion of the master, necessary and permanent, and that he had allowed such a sum therefor as the same would have cost a judicious and experienced farmer to make, but without reporting the evidence; it was held, that the principle upon which the allowance was made was substantially correct, and that it must be presumed, that the items thereof were supported by the evidence.

The treble damages, provided for by the Rev. Sts. *c.* 105, § 9, where a tenant in possession of land, for the recovery of which an action is pending against him, commits waste thereon during the pendency of the action, can only be recovered in the manner provided by the statute, and cannot be made an item of charge by mortgagor against mortgagee, in an account stated between them by a master in chancery, on a bill in equity to redeem.

An exception taken to a master's report is ineffectual, unless the evidence upon which it rests is reported, or unless something appears in the report to sustain it.

Where a mortgagee of real estate, who had been some time in the possession and occupation of the same, sold and conveyed the estate to a purchaser, who entered and took possession thereof, it was held, that, in stating an account on a bill in equity to redeem, the master could not properly make a rest in the computation of the interest, at the time of the assignment, and add the interest then due to the principal.

This was a bill in equity to redeem an estate therein described, brought by the plaintiffs, as the purchasers of the equity of redemption, against the defendant, as the assignee of the mortgage. A decree having been entered by consent, that the plaintiffs were entitled to redeem, and the cause having been referred to Welcome Young, esquire, a master in chancery, to state an account, and ascertain the amount due, the master made his report, to which both parties filed exceptions, upon which the cause was heard and decided at the last October term.

These exceptions, and the facts relating thereto, so far as they are necessary to be stated, were as follows : —

1. The master reported that the original debt secured by the mortgage was $2000, with interest from the 19th of September, 1839, instead of $3200, with interest from July 25th, 1839, as alleged by the defendant ; and to this the defendant excepted. The facts stated by the master, in relation to this exception, were the following: On the 17th of June, 1837, Aaron Hobart and Jared Whitman received an absolute deed of Elihu Hobart of his homestead farm, containing about twenty-six acres, with the buildings thereon, for the consid-

34*

eration, as stated in the deed, of $8000. On the same day, the grantees made and executed to the grantor a bond, with a condition to reconvey the same estate to him, on his paying them the sum of $3200, and interest. At the time of this conveyance, but without the knowledge of the grantees, Jacob Reed (afterwards deceased) had attached the estate, in a suit commenced by him against the grantor, on which judgment was afterwards obtained and execution issued for the sum of $2500. This execution was afterwards extended by Reed's executors upon a part of the estate, and thus diminished the security of the grantees. On the 25th of July, 1839, Elihu Hobart, in consequence of the levy of the execution, made and gave the grantees two notes of hand for the sum of $600 each, payable on demand with interest; and he made and executed to the grantees a mortgage of certain personal property to secure the payment of the notes; and, on the 30th of the same July, a second mortgage of other personal property, for the same purpose. A negotiation was afterwards entered into with the defendant, which terminated in an agreement by him to purchase the estate above mentioned, and to give therefor the sum of $5260·91; and, on the 13th of September, 1839, Hobart and Whitman, the grantees of Elihu Hobart, made and executed to the defendant an unconditional warranty deed of the same estate, excepting that part thereof which was set off on the execution above mentioned, for the sum of $2000. At the same time, the defendant paid the amount of the levy on the execution, and received a deed from the judgment creditors of the land so levied on. At the same time, also, the bond for a reconveyance of the estate by Aaron Hobart and Jared Whitman to Elihu Hobart was given up by the latter to the obligors, and the defendant made and executed a writing by which he agreed to convey to Elihu Hobart the estate conveyed by Aaron Hobart and Jared Whitman to him, upon payment to him by Elihu Hobart of the sum of $2000, in two several payments of $1000 each, with interest. It did not appear, that there was any obligation on the part of Elihu Hobart to the defendant.

2. The next exception was to the allowance, made by the master to the defendant, for repairs and improvements. Under this head, the master reported, that the defendant should be allowed for digging stone and making stone wall; for cutting bushes, breaking up unproductive land, and bringing the same into a productive state; for filling up and ditching low land, draining the same, and bringing it into grass land; for resetting and renewing a board fence; for building stone bridges over ditches and watercourses, in order to pass from one part of the land to another; for underpinning and clapboarding the chaise-house; for constructing a well for watering cattle; for making faced stone wall; for erecting stone gate-posts for the use of a yard; for grading the ground about the barn-yard, to make and preserve manure and carry off surplus water; for procuring and setting apple-trees; and for repairing fences. The master allowed the sum of $1220·25 for the aggregate of these various items; which were not put down by him at the cost, according to the evidence offered, but were allowed and put down at such sums, as, in the opinion of the master, they would have cost a judicious and experienced farmer to make. The master also reported, that, in the opinion of two of the plaintiffs' witnesses, who well knew the estate both before and after the repairs and improvements were made, and who lived near the premises, the salable value of the estate had not been increased more than $450, in consequence of such repairs and improvements. The master stated further, that the improvements made on the estate, according to the evidence offered, appeared to him to be necessary and permanent.

3. The defendant having cut wood and timber on the premises for his own use, the master allowed him to charge himself therefor, at the rate of $20 a year, for four years. The plaintiffs excepted to this allowance, on the ground, that the cutting of wood and timber was waste, for which the defendant ought to be charged with three times the value, as the treble damages to be assessed by law, when waste is committed during the pendency of a suit for the recovery of an

estate. The defendant denied that any claim of this sort was made before the master.

4. The master having reported that the defendant was liable and to be charged for the rent of pasturage only, the plaintiffs objected, and took an exception, that the defendant should have been charged with a larger sum as and for the rent of the whole estate, on the ground, that it appeared in evidence before the master, that such larger sum was the rentable value of the estate, and the plaintiffs inferred that that sum might have been obtained therefor; whereas the defendant only occupied the pasture by his cattle, and allowed the buildings to remain unoccupied.

The last exception was, that the master allowed the defendant to make a rest in computing interest at March 1st, 1843, which the plaintiffs alleged ought not to have been done. From the master's report, it did not appear, that there was any other reason for making this rest, than that, on that day, a purchaser of the estate from the defendant entered and took possession, and that all the repairs and improvements on the estate were subsequently made by such purchaser.

*F. A. Kingsbury*, for the plaintiffs.

*W. Thomas*, for the defendant.

WILDE, J. Several questions have been raised by the exceptions taken to the master's report, the first of which is, whether the plaintiffs are bound to pay the full amount of the original mortgage debt, namely, $3200, with interest, or only the sum of $2000, to which it was reduced, as the plaintiffs contend, before the assignment of the mortgage to the defendants. The question depends on the effect of the mortgages of personal property for $1200, which, we think, must be considered as payment to that amount of the first mortgage, otherwise the original mortgagees would have had the mortgagor's security for the payment of the sum of $4400, although it is admitted that the sum of $3200 only was due. That the defendant understood that the mortgage on the real estate was thus reduced to a security for $2000, must be inferred from the fact that he gave his bond, thereby agreeing

to convey the mortgaged premises to the mortgagor on the payment of that sum with interest, it being the same sum which he had paid for the premises.

The next question to be decided is, whether the allowances made by the master to the defendant, for repairs and improvements of the mortgaged premises, are reasonable, and such as are authorized by law. These allowances are large, but we cannot say that they are too large, or that any allowance has been made which was not authorized by law. The law allows the defendant to charge all the sums expended by him for reasonable repairs and improvements. Rev. Sts. *c.* 107, § 15. The master reports, that the improvements made on the estate, according to the evidence, appeared to him necessary and permanent; and that the cost, according to the evidence, was not allowed in full, but only so much as, in the opinion of the master, the improvements would have cost a judicious and experienced farmer. As the evidence is not reported, it must be presumed that the allowances were supported by the evidence, provided the same were made on a correct principle. And we think they were. " The true rule," as it is laid down in the case of *Reed* v. *Reed*, 10 Pick. 400, " undoubtedly is, that the mortgagor should be charged no more of the cost than that which is beneficial to the estate." As we understand the report, the allowances were made in conformity with this rule, although it is not so expressed in terms.

Another exception taken is, that the master refused to allow treble damages for waste alleged to have been committed during the pendency of this suit. Rev. Sts. *c.* 105, § 9. Whether the statute applies to a suit in equity, or whether this claim was made before the master, which is denied by the defendant, are immaterial questions; because, if the plaintiffs are entitled to any such claim, it can only be recovered in an action at law, as the statute provides. Such a claim for a penalty cannot be sustained in a court of equity.

Another exception is, that the master did not charge the defendant with a sufficient amount of rent; but the evidence

on this point is not reported, and nothing appears to sustain the exception.

The remaining exception appears to the court to be well founded. The master added the interest to the principal of the mortgage debt, at the time of the defendant's assignment, and thereon made a rest in the account, which we think he was not authorized by law to do. The assignment of the mortgage could have no effect upon the computation of interest.

For the purpose of correcting this error, and of bringing the account down to the present time, the case is to be recommitted to the master, who will also report whether we have construed his report correctly, as to the principle upon which the allowances were made for improvements; and if not, he is to make such alterations in the allowances as the rule now laid down may require.     *Report recommitted*